Case No. 11-1462, Agnieszka Stendera et al. v. State Farm Insurance Company Good morning and thank you for allowing us time to have an oral argument in this case. I hope my comments can make this a little clearer. As you're aware, my clients, I'll call them Mr. and Mrs. Nijewski, although she kept her maiden name. They own a home in Deerfield, still do. He's a single contractor. They spent a lot of time fixing up the house. They insured the home with State Farm. They bought $390,000 of coverage A, the dwelling coverage, and they bought $292,000 of coverage B, the personal property coverage. They were in Ohio on August 1, 2008, and their house had a fire, seriously damaged the home. They submitted the claim to State Farm. State Farm sent their adjusters out, and over a period of time, they finally agreed on a certain number for both the damage to the building and the damage to their contents. They agreed that the damage to the building was $174,191.24. That's the actual cash value, which means replacement cost minus depreciation. So it's the depreciated value of their house, the damage to their house. And then for the personal property, they decided that damage was $123,765.68. When you put those two numbers together, that's $297,956 of damage under State Farm's own evaluation of what happened to Nijewski's home and the property. Once that was done, then State Farm denied the claim based on their assertion that they somehow burnt their home down. I have no idea why they're claiming that. There's no facts to support that. So the adjusters had to file a lawsuit against State Farm. They did. When they filed the lawsuit, State Farm, for the first time, recognized the law that's been around since I was born, that they have to pay the innocent co-insurer, which in this case is the mortgage company. They can't deny benefits to the mortgage company who's on that policy. So they paid the $174,000 to the mortgage company. And so by January 4, 2010, about a year and a half after the fire, Mr. Nijewski had repaired his home himself using his own labor, supplies he came up with, his friends. He got the house done. The bank inspected the home and decided, well, if the home's been fixed enough, our collateral has been protected, which is all they cared about because he had a mortgage still on that property, and they paid him that money. Then State Farm, in this case, brings a motion saying, well, you've got to prove that you spent yourself every penny. You hired a contractor and paid him $174,000. Or you have 174,000 ounces of supplies and your labor itself is meaningless. Whatever. You have to prove every penny that both paid to the dwelling in order to have a claim for the contents portion of your house. It seems to me that the court here today has been kind of faced with really kind of an artificial situation because we're faced with this $30,000 figure that the trial court said was a stipulation. Well, actually, let's take that first. In the summary judgment order, the trial court said that this was a stipulation. And I would ask you, where did that come from? How did that become a stipulation? Do you accept that? There was no stipulation. I think if I said something to the judge, like, we agree that he had receipts showing supplies he had purchased of around $30,000. That's where that $30,000 comes from. Receipts. He didn't have to keep any receipts. He didn't have to even spend a penny fixing his house up. In the case that we cite, there's people, you know, State Farm pays the insured the actual cash value of their home, the damage to their home, and the insured doesn't have to pay, spend anything at all to repair his home. And they can still make the contents claim under the separate coverage of the policy. You know, I compare it to like, maybe just to make this an estimate for your car, and you say it's $10,000. Well, you don't have to go spend $10,000 to repair your car. You don't have to, you can just cash that check. You can not repair your car at all. You can go to some other shop. Well, you certainly can, and then you have a car that's worth $10,000 less, and that's, it's understood. That's the case. But in this case, that's not what happened. In this case, your client signed a certificate in which they said the house has been restored to its original condition. So if the house has been restored, here's my question, and as I preface my remarks, we're in kind of an artificial situation because of the discovery dispute that happened in the trial court, and we're stuck with this $30,000 figure. Assuming that they signed the certificate that said that we've restored the house to its original condition, it seems to me that if we accept the numbers as they are, the numbers are the numbers, then it looks to me like your clients are going to make about $143,000 on this fire, and I want you to dissuade me from that. Yeah, they certainly aren't. They've been paid nothing for their $123,000 of contents, and he himself was able to repair the building with the receipts he found and his own labor and his friends who did it with him, and to the point where the bank was satisfied that that thing he signed was for the bank as part of his agreement with them, and really their inspectors came out and made sure that he had repaired the home. Well, yeah, and if they had come forward and said, instead of having this discovery fight, if they had come forward and said in the trial court, you know, here's our labor, and this is what our labor is worth, and by the way, when all is said and done, Judge, we spent in labor and in materials $174,000, then it would be awash, but that's not what happened. What happened was your clients, you know, stonewalled the discovery and said, we're only going to tell you about $30,000 because we don't have to tell you anything else, and so the trial court got stuck with this $30,000 figure, and so if you do the math, if State Farm paid $174,000 and your clients paid $30,000, then theoretically your clients are going to make $140,000 on this fire. So we did. They had the same house they had before the fire, but they're missing $125,000. And the question I have is, what authority did the trial judge have to even require that the insureds be forced to tell how much they spent on the home? Zero. So did Wells Fargo approve the status or the condition of the home after it had been repaired? They did. And is that the only party that really should be complaining? Exactly. That's the only person that money is involved in, whether their collateral has been properly protected. It has nothing to do with State Farm. It's like an auto case. They can't complain. We gave you a $10,000 check, but you didn't fix the car, so now when you make your U.M. claim or your med pay claim, we're going to deduct that $10,000. Let me ask you this. If it would have been brought out in this case what the fair market value of your clients' labor was, would we be here today? If that could all be done, I guess they wouldn't have the same basis for that argument. But my position is it's still completely irrelevant, because like I said, they could have spent zero, they could have not spent anything. The bank could have kept that money and reduced his mortgage and they'd be happy. Because they had about a $300,000 mortgage, so if they had $120,000 left, they'd probably be satisfied the lot was worth more than that. So it's completely irrelevant what was done. State Farm is going to get up and argue in a minute, and I'll give you a chance to get ahead of them. They're going to argue the policy language, and the policy language they're going to say says that, yeah, we have to pay the actual cash value, but never more than the cost of repairs. And they're going to come up in a minute and say, we never have to pay the actual cost of repairs, and the actual cost of repairs here is $30,000. I think that's what they're going to say. That section of the policy is the part that talks about this actual cash value, which is the depreciated value of your property. And the next paragraph is the replacement cost, which is like new, better than you had before. And the only time they talk about that is the actual cash value obviously can't be more, the depreciated value can't be more than what it would cost to build a new. That doesn't make sense. It doesn't say you had to do it, though. It doesn't say you had to spend the money. Well, that's why I say we're presented with an artificial issue, because it doesn't make sense that the estimate that State Farm initially came up with was $174,000 and that the cost of rebuilding was $30,000. It doesn't make sense. It doesn't. But that's the record that has been brought to the appellate court. It's a false issue. I agree with that, but the premise of their whole argument is that this is an indemnity contract. It's not a gambling contract. You shouldn't be able to, and if we, again, if we accept the $30,000 figure, because that's all that we have. Now, we could say that that's a question of fact and send it back on that. And I know that you said that at the end of your brief. But if we accept the $30,000 number, we're in a situation where we're saying that these people had a fire. They're going to get paid for their property, their personal property. They're going to get paid $174,000 to rebuild a house that cost them $30,000 to rebuild. And to me, you know, to me, that's $143,000 profit. Now, I understand that that's an artificial number because that $30,000 is an artificial number, but that's what we're faced. And I agree that this is an unusual situation because the numbers are upside down. But the only reason the numbers are upside down, as was alluded to by Justice Gordon, is because we never got the real number. And I have a feeling that the real number, if this went back or if it was done in the first place, the real number would be right-side up. And it would be a bigger number than the $174,000. And we wouldn't be here, at least not on that issue. And so what I'm concerned is, and I guess this is the place for academic discussions, but what I'm concerned is that there's a public policy that says you should never profit from an insured loss. And theoretically, I see a profit here. Well, there's no double indemnity. They receive nothing for their contents. Well, but they will, assuming that, you know, I understand you have to add and subtract. But if you add and subtract all the numbers, it really, if you offset the $123,000 by a $123,000 payment, it really just comes down to the $174,000 versus the $30,000. That's what it comes down to. And my question is always going to be, in an indemnity situation, should you get $174,000 when it costs you $30,000? So I guess his value of his labor and being a general contractor was $124,000. They asked you that and you wouldn't answer it. Well, it looks like it became relevant. I have two questions, but let's address them first. I'm not a big fan of discovery disputes, obviously. Let's address what relief are you asking for here? What do you think we should do, assuming it comes out the way you'd like it to come out? The amount of money he spent or labor he exuded to repair his home is completely irrelevant to the only issue that's left in this case, which is the unpaid contents claim, which State Farm acknowledges is worth $123,000. And then we can try to put them to the proof and show how they have some evidence that he burned his house down. And that leads to my next question, which concerns, isn't there implicit in State Farm's position here that maybe they made a mistake in terms of how much the building was damaged, or if they believe that they had a right under that clause that was just referred to about not paying more than what the actual repairs were, then why shouldn't they have been burdened with going back to the building and saying, this is what we estimate the repairs to have really been, including labor. And so not to put the burden on the insurer and have the insurer say, how much did we spend? Why should they pay for the coverage? State Farm wants to make a complaint about it. Let them go out there and say, we believe that really the repairs only amounted to $120,000 or $80,000 or $90,000, and we're entitled to get some money back. But they didn't do that. They want to put the burden on you, on your insurance. And the question is, where's the case law for that? The only case law that's relevant all goes our way, the three cases that we've cited there. There's no case of support. There's a great case in Louisiana where State Farm paid the insurer the entire cash value amount. He abandoned the home, did nothing to the home, sold it as is, and State Farm didn't sue him saying, we want that money back, you've got a windfall. It didn't happen that way. State Farm's a good company. I have State Farm. Allstate's a good company, too. When I make a claim, I'm pretty happy with the collusion plan. They send me to a really top-notch collusion place and they send me a check. Well, I've got a guy down the street who'll do it for half that price. And they're not suing me saying, well, we want that $5,000 back. It's not the way it works. They have professional adjusters. They know what the top contractor's costs are to do the kind of work that had to be done in this home. And that's what they pay you, like they should. It doesn't matter if you do it yourself or if you have a cheaper contractor that does it. And they get the savings because of your willingness to go with someone other than the guy they recommended. Well, how do you effectuate, though, that second clause of the provision that says never more than the... That's just explaining how your actual cash value, first payment, is not going to be more than what it costs to repair. It's going to be what it costs to repair minus depreciation. That's how actual cash value is determined. And the next paragraph says when you do the work, then we pay you that additional amount, the depreciation. We could be suing State Farm for the depreciation that they deducted from the $174,000, but we chose not to because you can see the trouble we're having. All right. Well, save some time for reply. Oh, yeah, great. Thank you. Thank you. May it please the Court. Counsel. My name is Dan Nolan, and I represent State Farm Fire and Casualty Company. Justice Palmer, you hit the nail right on the head as far as $30,000 being, you know, we're dealing with an artificial number because of a discovery dispute. The $174,000 is also an artificial number because it's an estimate that State Farm prepared itself that was based on misrepresentations by the insurers. And State Farm filed in this case at the very beginning an affirmative defense, number seven, which asserted that the insurers had misrepresented to State Farm the amount of work that they had done prior to the fire with regards to the remodeling, which So why isn't this, why wasn't that the trial below as opposed to a summary judgment decision? We filed two things. I mean, we were stonewalled with regards to discovery with regards to damages. Plaintiffs' depositions, unbeknownst to State Farm, were taken within ten days after they signed this document saying repairs had been completed to the mortgage company. And they were asked at the deposition, you know, did you repair your property? Yes, we did it ourselves. How much did it cost? We don't know. And we pursued that. We said, give us all your receipts. You know, we asked. You saw it in the record. We asked to redepose the plaintiff specifically on the damages now that we had these receipts after their depositions were taken. And we got stonewalled on that. So we did two things. We filed a motion to bar and we filed a motion for summary judgment because they essentially put themselves in the... But the summary judgment motion seems to mix coverages. And had you filed a motion for, to bar them from explaining in excess of $30,000 that they spent to repair the home and then you go to trial on whether or not the home misrepresentations were made as to the condition of the home before the fire occurred, then the State Fire may get some relief. But why, you know, where's the authority for doing what the judge allowed you to do in this case? Well, the authority is number one in the policy and number two in the law that an insured should not profit from a loss. The contract, as Justice Palmer said, specifically... But where the insured doesn't profit from the loss, doesn't that get resolved during the course of the trial on whether or not misrepresentations were made so that the $174,000 estimate was inaccurate and therefore State Farm is entitled to receive some of that money back? The issue that plaintiffs raised at the trial court level to prevent us from doing the discovery was State Farm is not entitled to a setoff of the amount they paid to the mortgage company off of the personal property claim. Okay? And I'll give you just... Here's the question, you know. Given what you're saying in terms of the condition of the home prior to the fire was misrepresented, then chances are the personal property claim is also misrepresented and therefore why isn't there a trial on everything as opposed to trying to piecemeal it? Because we're going to have this issue at the end of the case anyway, the way it was going through. We're going to have an issue... Why is this case here now? And what... Well, interestingly, it seems that a lot's going to hinge on this $174,000 figure that State Farm came up with when they did their initial... When the adjuster came up with this $174,000 figure. And you're contending that that's a phony number too. And you did contend that in your reach though in the summary judgment motion. And I'm wondering if maybe that cuts both ways for both of you. And that is it would certainly... If the $174,000 number is a phony number, then that would preclude summary judgment for the plaintiffs. But it might also preclude summary judgment for State Farm. Because, you know, if the courts would have a tendency to stick State Farm with their estimate, then State Farm should at least have the opportunity to say, wait a second, that's a phony number. But those are just allegations at this point. And they haven't been proven. So I'm wondering if maybe, you know, not only the value of the services of the plaintiffs have to be fleshed out in the trial court, but your allegation that the $174,000 number is a phony number also has to get fleshed out. Because, you know, if there's a tendency that, hey, State Farm came up with this number and it goes back to the plaintiffs making misrepresentations to us, well, that's a big fat question. And it's an important question. Because if that $174,000 number is a phony number, then even the plaintiff's theory that they're stuck with that number, they become unstuck. Right. So why should we just send the whole thing back? Well, the reason you shouldn't send the whole thing back on that is because under contract law, the plaintiffs have a burden of proving their damages. In this case, damages under a contract are defined by the contract. And the language, the plaintiffs were not I'm sorry to interrupt you, but I will. Let's get back to the $30,000 number again. Because, you know, really it seems to me what happened here was, well, you can correct me if I'm wrong on the record, but I think what happened was you couldn't get any answers from them and you filed a motion, okay? And you filed a motion asking for sanctions. I don't believe that motion was ever ruled on. And the court went to summary judgment. Now, it seems that what the trial judge did was, you know, he stuck them with that $30,000 number. But, you know, if that motion would have been ruled on and he entered a 219 order and said that, you know, because this is a violation, I'm going to sanction the plaintiffs and my sanction is that they're stuck with that number, we might be in a little bit of a different position. Shouldn't we just, since it's your obligation to ask that your motions be ruled upon, shouldn't we send it back and get a ruling on that and find out what the real dollars are here? Well, on the motion, well, as far as finding out what the real dollars are, the question is can you... I asked them, where's the stipulation? There's a stipulation that was filed prior to the summary judgment motion, but it doesn't talk about the $30,000. It talks about other things. It talks about the personal property. Where the trial court was coming from on that is in plaintiff's response to State Farm's motion to reconsider and their cross-motion for summary judgment on the counterclaim. This is in the record on page C01129. They state, plaintiffs have produced receipts showing they incurred $30,837.61 of costs in making repairs to the home. Nowhere in their response do they assert that that number is wrong, that it's more than that. But at least they agree that there was no sub-stipulation. Stipulation that... The trial court said the parties had stipulated that the expense to bring the home back to value was $30,000. There's no sub-stipulation. As far as a stipulation that says in the word stipulation, no. A stipulation is an agreement. It sounds like a finding of fact that the trial judge made. Well, when someone states in their brief that these are what they incurred and there's no disputed fact as to other amounts that they incurred, then I don't know, the judge would be speculating with regards to other damages. Is it fair to say that that only concerned material as opposed to labor? Yes, absolutely. So where is labor? I mean, why should the judge simply say $30,000 is it? Because there wasn't anything in the record. They weren't taking that position. I mean, plaintiffs, if you think about it this way, the money the plaintiffs got was money. It was just money. It's not like they got it from the mortgage company with some, you know, that the mortgage company made sure that all that money went into the house. The mortgage company gave it to them. They made sure the repairs were done and they gave it to them. It was money. So if they spent, say, $50,000 on the house, then they got $124,000, which they could have replaced all their personal property with. So essentially, sending it, going back, unless there's going to be some sort of, I mean, it's hard to turn the clock back. They haven't presented any evidence of damages beyond $30,000. What is that going to be if you send it back? How are they going to prove it? It is their burden to prove it under the contract. And we're still left with the ultimate unresolved question as to whether State Farm is entitled to a full setup of what they paid. And the plaintiffs have to then prove damages in excess of that in order to recover it at the trial court level. I mean, that's the way every breach of contract case goes about. Let me ask you one more question, which we haven't discussed, and I think it's going to come up, however. Setoffs are usually considered to be a compensation for the wrongdoer for other payments that have been made with regard to the same injury. Isn't there an argument here, however, that because there are separate lines for the dwelling and for the personal property, that setoff doesn't apply here because we're talking about a different injury? I don't think so, because it's one contract that the plaintiffs had. They paid one premium for the contract. While it may be separated into you have this limit for this coverage and that limit, and the actual coverage as to whether it's all risk or named peril may be different. It's one premium. It's one contract. And just if the insured misrepresents with regards to the personal property claim, then they don't get any coverage for the building either. But this misrepresentation that you keep talking about was not part of this motion for summary judgment. No, I'm sorry, Ron. I'm not trying to argue that there was a misrepresentation. But when you do that, you know, it takes away the credibility of what you're trying to argue. So you ought to stay away from that. I apologize. What I was trying to refer to is the case law that deals with misrepresentations says that if there's a misrepresentation to one coverage, the insured is barred as to all coverages. I'm not trying to prove to Your Honor today that there was a misrepresentation. Let me ask you this. How does State Farm take advantage or how do they have privity concerning what the mortgage company does? Well, State Farm is entitled, the case law is clear that State Farm is entitled to a set off of what they pay under the contract to the mortgage company. What the mortgage company does with that money, real estate farm has no control over. That is governed between the mortgage company and the insured. But, you know, in this case, we've been talking about the insureds ending up with the money. Is the mortgage company an additional insured under policy? They're insured as a mortgage company. Yes. That is an additional insured. Yes. Okay. Here's the problem I have with the contract analogy is that, you know, of course you need to pay someone something to get a promise to do an act. And here we have separate payments by the insured. They pay for dwelling coverage and they pay for personal property coverage. Aren't there different premium amounts for those different coverages? No. I mean, isn't that how they calculate it? Isn't that how you calculate premiums? How much personal property are you claiming here? If you're claiming $20,000 in personal property in your home, you're going to pay $10 a month. But if you're claiming $150,000 of personal property in your home, you're going to pay $30 a month. And, therefore, there's that connection between the coverage for that portion of the insurance contract with a premium, consideration, that sort of thing. Your Honor, I'm not an actuary, but, I mean, I can pull the policy itself. I mean, there's a lot of policy coverages under this policy, including liability and medical payments. It's all single premium. It's all derived from actuarials. Different components. Not by a separate premium for each coverage. Well, wait a minute. In the insurance business, you know, some of the terms that are used is line coverage. One's one line. Another is another line. Each one has a separate premium. That's not the case in this case. It's not the case. You mean it was one premium? One premium. And it's in the record. But the whole thing, and it wasn't divided up as to how that premium is. It's in the record. I can give you that. Let me ask you another question, though, along those lines. What happened with regard to the counterclaim? Because in addition to your affirmative defense, you also filed a counterclaim, which was the same theory. What really happened, Your Honor, is when the Supreme Court came out with the Thornton v. Garcini case, there was some general concern to be overcautious that any set-off should be raised in a counterclaim. And if you look, our counterclaim was actually request. We filed the affirmative defense right away at that time. And by the time we got the counterclaim filed, I think later the Supreme Court actually amended their position with regards to that set-off. So that Thornton v. Garcini case was the driving fact for us raising it as a counterclaim. I don't think we, you know, I don't believe we need to raise it as a counterclaim. Did you get a judgment on the counterclaim? And basically it just was all lumped together. It was pretty much all lumped together. Because it seems to me that the counterclaim obviates the set-off argument. I mean, if there's some problem, wouldn't you agree that if there's some problem with regard to separate lines, you can't have a set-off for dwelling loss over to the personal property? Well, then you'd say, okay, fine. We won't use it as a set-off. We have a separate counterclaim. We want to get paid back for our overpayment. And that would take care of that issue. And you have a counterclaim, isn't that right? We do have a counterclaim. Let me ask you this. To just get back to the misrepresentation thing, what evidence is in the record that the $174,000 figure was arrived at as a result of misrepresentation? There's really, as far as I can tell from my review of the record, there's nothing in the record with regards to how that number was determined. The reference to that record, that number in the record, is really the amount that was paid to the mortgage company and the amount that was came up with by State Farm. But beyond that, I don't... But at the outset of your argument, you told us that that argument, I'm sorry, that that number was arrived at as a result of misrepresentations that were made to State Farm by the insurers. Is that right? That's solely in our affirmative defense. What evidence do you have of that? Tell me what evidence you have. Again, if the courts are going to say that State Farm is stuck with that $174,000 number, unless it's a phony number, then tell me why it's a phony number. Well, it's a phony number because in the initial representations by the insurers after the claim, they represented that they spent $50,000 to fix up... they spent $50,000 to fix up this property prior to the fire. And during the fire investigation and the examinations under oath, while they maintained that representation, State Farm obtained financial records from them and there was absolutely no support financially in the record for them to come up with that $50,000 that they claimed. And they did submit receipts in the underlying claim with regards to that remodeling, which amounted to about... $10,000 somewhere in that range. Is that supposed work that was done before the fire, that discrepancy, is that something that jacked up the $174,000 number? No. What would happen is that because State Farm took the insurer's word at the beginning of the claim with regards to this property being new as opposed to old, the depreciation on the estimate was much less than it would have been. When counsel refers to ACV, you know, generally being described as replacement cost minus depreciation, that depreciation number would have been a lot larger. But I also just want to point out while I'm on the subject that there is a case... Let me just stop you for a second. What you're talking about in regards to that misrepresentation, none of that's in the record on this appeal, is it? The financial records, I believe, are in, but I'm not sure... You're talking about the misrepresentation part. Is any of that in the record for us on appeal? You know, I have to say I'm not sure because I didn't specifically look at that for... And you understand that we have to decide this case based on the record before us on appeal? I do. But I just want... The affirmative defense that we filed is in the record, stating that there was... The pleading. What's that? The pleading. The pleading, yes. And I believe the financial records, I'm pretty sure, are in the file. But as far as whether the actual examinations under oath are part of the record, I'm not sure. Let me go back to a comment I think Justice Palmer made, or maybe it was Justice Gordon, regarding whether this case would be here if the plaintiffs had, or the insurers had, somehow gotten together $174,000 worth of receipts, including labor and all that. Now that I've heard your argument, I don't think that would have ended the case at all. And the only thing is whether or not it would have ended in summary judgment fashion as opposed to a trial. You really believe that there are no factual questions that need to be addressed here, that we can affirm the circuit court's grant of summary judgment in this case? Well, the policy, the language in the policy as to whether they have to prove at this point the actual cost of repairs on their contract, that's an issue now that's going to be an issue at trial, that would be an issue after trial. The relief I'm talking about, you're saying that we can affirm summary judgment as it was granted by the trial judge in light of the record, as Justice Gordon just pointed out, that we have before us? Well, you know, I believe based on the plaintiff's representations in the underlying case that they spent $30,000 and didn't claim that they spent... Even in the absence of a stipulation. Even in the absence of a stipulation. We know the figure's there, but it isn't necessarily a figure that the insurance said, we're binding ourselves to this figure. But the only other evidence in the record is the plaintiff's actually saying, we don't know how much. Well, doesn't that raise the question about if there was an obligation on them to disclose that information, then it had to go by way of a 219 motion, and if you didn't pursue it... And in fact, I wonder whether we should even be addressing this at all, given that there's still a 219... There's still a sanction motion pending that has been... that hasn't been addressed by the trial court, even though he granted the summary judgment. So I'm just wondering, how did you get to summary judgment without... What's the foundation for the summary judgment, given all these questions that are... continue to exist? Well, I believe it was just on the fact that Judge Taylor and the trial court agreed with the policy language that plaintiffs have the burden of proving their actual loss, and that based on what was the evidence about the damages in the record, that an estimate of the actual cash value is not, you know, an issue for determining the plaintiff's actual cost of repairs. So that $174,000 number is... is just a number that's out there. It doesn't relate to the contractual claim that that's... that was the... and that we're entitled to a... State Farm's entitled to a full set-off. Thank you very much. Thank you. Very short, but... Very short. Just three things. First, State Farms are going to stand here and suggest that they don't know how to evaluate if fire loss is created. That's all they do all day long. And for them to also say now that it was only an estimate. They paid that money. The check was issued. It wasn't an estimate anymore. It went back and forth quite a bit. The insurers had their own public adjuster working with them. It took a long time for State Farm to agree to that number, and they paid that number. So it's not an estimate anymore. And then for them to suggest now, every insurer apparently, when you get a check from State Farm, you better start keeping receipts, keeping track of what you do, or else they may sue you for your labor that you did yourself, or they're going to take a credit, maybe, on the other part of your claim for this money. There was nothing in the policy saying keep your receipts, keep your time logs, talk to your friends. Everybody signed a sheet of paper as to how much they worked for you. And if not in the policy, they could have written a letter to them saying, okay, we paid what we think is the value. So don't you have an obligation to prove your loss? It was done when State Farm, in the process, they came up with $174,000. But that's an estimate. It was not an estimate. The estimate was lower. It went up and up until they finally, working with the plaintiff's adjuster, came up with that number, and they paid that number. They didn't pay you that. They paid the mortgagee. They had to pay the bank. True. And then when the bank was happy with the work being done. But the damage itself is inseparable between the two, between the insured and the mortgagee. Correct. And it's the same damage. Right. So it's just, it was never told, you have to log your time, keep your receipts, or else we're going to take that credit from your contents claim, or who knows what other claims, or if not, just sue you for the money. They don't do that. They've never done it. Well, let's say there wasn't a mortgagee clause. Let's say there's no... If they don't pay you, and you bring a lawsuit, you'd have the obligation to prove your damages. If they do, I would pay them. They paid $174,000. We agreed on that number. That's done. I don't have to prove anything more to State Farm once they issue that check. Where's it say that? Let's say State Farm wants to be a good neighbor, and they say, you know what, we know that you're in some extremis here. Here's the money. But then they come back to you and say... They did advance the money. They did advance his rental thing and a little bit of money, which is what a good company does. But then they worked this thing over for months until they came up with that number, and then it's done, it's paid, with no warning that, okay, now we're not really sure whether we're going to want that money back from you or take our credit on this other coverage. So you're saying that if they pay you their... What is it, like an estoppel? You're saying that they pay you money, and they later on determine that they don't think that that was the right amount, they can't go to you as the claimant and say, prove your loss? I suppose they could prove that we fraudulently presented this claim to them for months and months and that our public adjuster couldn't come up with the right number as to what they want to pay for a fire damage. Yes, they could do that. Well, okay, isn't that what they just said to us? I don't think so. I mean, State Farm just got up and said, you know what, the only reason we came up with $174,000 is because we were lied to. That's what they're saying. Because these people deal with cash, all right? My clients aren't cash people. That's why they don't have a lot of records of what they do. If they wrote credit cards and checks, they could show expenses. All that is interesting enough, but the issue before us is whether the Circuit Court properly granted summary judgment in a case where somebody has the burden to prove something. Either State Farm has the burden that they paid more than they should have paid, or the insurers have to prove what they actually spent, but proof is required, and I don't see where we get to summary judgment. Of course, I agree on that, but I think the summary judgment I'm looking for is that there's no set-off from the $174,000 they agreed to pay on the property from the only thing that's left, which is the unpaid. What if we simply say there's a factual issue regarding whether the $174,000 was an accurate number, and we can avoid dealing with the set-off entirely because until that number is established, there is no set-off. Yes, that would be the immediate problem, but it really does a bad service to every insurer in this state and the rest of the country, who now has to get a check from their insurance company and then prove how they're spending that. That's not the way it works. It's the burden. I'm talking about the burden. After they pay. I think we can recognize one thing, and that is that if we did that and we sent the case back and said, prove your loss, that number is going to be a lot more than $174,000. Then it won't be a set-off issue. That's what a trial is for. Thank you very much.